RACHEL LEDERMAN (SBN 130192)
Rachel Lederman & Alexsis C. Beach
Attorneys at Law
558 Capp Street
San Francisco, CA  94110
Telephone: 415.282.9300; Fax: 415.285.5066
Email:  rachel@beachledermanlaw.com

Attorneys for Plaintiffs Moku Hashitaka,
Jessica Fish Hashitaka, and Takuro Hashitaka

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| MOKU HASHITAKA, through his mother and guardian JESSICA FISH HASHITAKA, and JESSICA FISH HASHITAKA, individually, and TAKURO HASHITAKA,<br><br>Plaintiffs,<br><br>v.<br><br>OFFICERS BRENDAN CARAWAY, ANTHONY BAUTISTA, and MICHAEL PERALTA, SGT. ROBERT IMBELLINO, CHIEF GREG SUHR, CITY AND COUNTY OF SAN FRANCISCO, and DOES 1-50, inclusive,<br><br>Defendants. | CASE NO. _____<br><br>**COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND OTHER WRONGS**<br><br>**42 U.S.C. § 1983**<br><br>JURY TRIAL DEMANDED. |

# I. INTRODUCTION

1. This is a civil rights complaint arising from San Francisco Police officers' wrongful and racially motivated brutality, arrest and imprisonment of plaintiff TAKURO HASHITAKA, brutality toward plaintiff's infant son MOKU HASHITAKA and the wrongful detention and separation of baby MOKU from his mother, JESSICA FISH HASHITAKA, on December 13, 2013.

2. Plaintiff TAKURO HASHITAKA, a Japanese immigrant, was biking to Trader Joes grocery store a few blocks from the Hashitaka family's San Francisco home, with MOKU secured in a "Baby Bjorn" front baby carrier and further secured by a sweatshirt that had been modified into a traditional baby carrier garment with a hole for Moku's head. TAKURO was riding slowly and carefully in the bike lane on 8th Street, when San Francisco Police OFFICERS ANTHONY BAUTISTA AND BRENDAN CARAWAY drove into the bike lane and almost hit TAKURO and MOKU. TAKURO gave the officers who had almost hit him an annoyed look. Within minutes, he was stopped by multiple officers and soon lay unconscious on the ground. Officers used a knife to cut MOKU from his father's chest and then removed MOKU to Child Protective Services despite the fact that Moku's mother, plaintiff JESSICA FISH HASHITAKA, was just a little more than one block away.

3. Defendants' actions were bias motivated and deprived plaintiffs of their rights to be free from unreasonable searches and seizures; to equal protection of the laws and to due process of law; to be free from the use of excessive and/or arbitrary force; to be free from unreasonable, summary punishment; and to personal liberty, freedom of movement, and familial association, all guaranteed by the United States Constitution.

## II. JURISDICTION AND VENUE

4. This action arises under Title 42 of the United States Code, §1983. This Court has jurisdiction over the action under 28 U.S.C. §§1331 and 1343.

5. Plaintiffs have filed administrative claims with the City and County of San Francisco Oakland in compliance with California Government Code §§910 et seq. The claims were denied on July 21, 2014.

6. Venue properly lies within this District under 28 U.S.C. §1391(b). The named Defendants perform their official duties in this District, and the events and omissions giving rise to plaintiffs' claims occurred in this District.

## III. INTRADISTRICT ASSIGNMENT

7. Pursuant to Local Rule 3-2, this action may properly be assigned to the San Francisco or Oakland divisions of this court.

## IV. THE PARTIES

### Plaintiffs

8. Plaintiff MOKU HASHITAKA, a one year old infant, sues through his mother and guardian, JESSICA FISH HASHITAKA. JESSICA FISH HASHITAKA and TAKURO HASHITAKA are adult residents of California.

### Defendants

9. Defendant CITY AND COUNTY OF SAN FRANCISCO is, and at all times herein mentioned was, a municipal corporation duly organized and existing under the laws of the State of California.

10. Defendant CHIEF GREG SUHR was the Chief of Police for the City of San Francisco at the time of the subject incident.

COMPLAINT
*Hashitaka v. Caraway, et al.*, Case No.      * 3


11. Defendants OFFICERS BRENDAN CARAWAY, ANTHONY BAUTISTA, and MICHAEL PERALTA were San Francisco Police Officers at the time of the subject incident, who participated in the police conduct complained of.

12. Defendant SGT. ROBERT IMBELLINO was a San Francisco Police Sergeant at the time of the subject incident, who participated in and supervised the police conduct complained of.

13. All of the individual defendants are being sued in their individual and official capacities.

14. Plaintiffs are ignorant of the true names and/or capacities of defendants sued herein as DOES 1 through 50, inclusive, and therefore sue said defendants by such fictitious names. Plaintiffs will amend this complaint to allege their true names and capacities when ascertained. The Doe defendants include other individuals who participated in the conduct complained of herein. Plaintiffs are informed and believe and therefore allege that each of the Doe defendants is legally responsible and liable for the incident, injuries and damages hereinafter set forth, and that each of said defendants proximately caused said incidents, injuries and damages by reason of their negligence, breach of duty, negligent supervision, management or control, violation of constitutional and legal rights, or by reason of other personal, vicarious or imputed negligence, fault, or breach of duty, whether severally or jointly, or whether based upon agency, employment, or control or upon any other act or omission. Plaintiffs will ask leave to amend this complaint to insert further charging allegations when such facts are ascertained.

15. In doing the acts alleged herein, defendants, and each of them, acted within the course and scope of their employment.

16. In doing the acts and/or omissions alleged herein, defendants, and each of them, acted under color of authority and/or under color of law.

17. In doing the acts and/or omissions alleged herein, Defendants, and each of them, acted as the agent, servant, employee and/or in concert with each of said other defendants.

## V. FACTUAL ALLEGATIONS

18. On December 13, 2103, at approximately 5:45 pm, plaintiff TAKURO HASHITAKA left his home at 8th and Ringold Streets, San Francisco, California, with his then ten month old son, plaintiff MOKU HASHITAKA, intending to go to the Traders Joe's grocery store two and a half blocks away. TAKURO had MOKU in a "Baby Bjorn" front baby carrier and further secured by a sweatshirt that had been modified into a traditional baby carrier garment with a hole for Moku's head.

19. TAKURO got on his bicycle on 8th Street and began riding slowly and carefully in the bike lane with MOKU in the baby carriers, when defendant San Francisco Police OFFICERS ANTHONY BAUTISTA and BRENDAN CARAWAY, in a marked police car, drove into the bike lane and came close to hitting TAKURO and MOKU from behind.

20. TAKURO gave OFFICER CARAWAY an annoyed look, and continued biking down 8th Street in the bike lane. OFFICER CARAWAY then asked TAKURO over his car loudspeaker why MOKU was not wearing a helmet. As TAKURO stopped at the light at 8th and Harrison, CARAWAY and BAUTISTA pulled up alongside plaintiffs and

COMPLAINT
*Hashitaka v. Caraway, et al.*, Case No.    * 5

CARAWAY inquired again about the helmet. TAKURO was unaware of a requirement for a baby to wear a bike helmet, and asked CARAWAY what the authority was for this. CARAWAY responded that he didn't have to explain anything. Defendants activated their lights, and TAKURO pulled over into the gas station on the other side of the 8th and Harrison intersection.

21. Defendants CARAWAY and BAUTISTA got out and immediately grabbed TAKURO'S wrists, telling him that he was going to be arrested and that Child Protective Services would take MOKU. They never tried to explain what was going on, never asked TAKURO to lift MOKU out of the baby carriers, and never asked if there was another parent nearby who could take MOKU.

22. Defendant SGT. ROBERT IMBELLINO and Officers Mougos and Ross, and/or other unknown SFPD officers arrived and assisted in taking TAKURO to the ground. Officers Liu, Peralta and Wang and/or other unknown SFPD officers also arrived and assisted once TAKURO was restrained on the ground on his back. Defendant CARAWAY choked TAKURO until he lost consciousness, and then defendant BAUTISTA began cutting TAKURO'S baby carrier sweatshirt, in which MOKU was still fastened, with a knife. When TAKURO regained consciousness, CARAWAY choked him again until TAKURO lost consciousness a second time. He had still never attempted to talk to TAKURO or asked him to take MOKU out of the carrier. Defendant Officer BAUTISTA then gave the knife to defendant Officer PERALTA, who finished cutting the terrified baby out of his father's garment. PERALTA also cut through the Baby Bjorn carrier, rather than simply unsnapping it and lifting MOKU out, or asking TAKURO to do so. PERALTA then handed MOKU to Officer Wang.

When TAKURO again regained consciousness, defendants continued to choke him even though he was already handcuffed, and wrapped a hobble around his legs.

23. TAKURO begged the officers to call his wife, plaintiff JESSICA FISH HASHITAKA, to come get baby MOKU, telling defendants that the family lived only a block away and giving them JESSICA'S telephone number. However, Officers CARAWAY and Wang proceeded to take MOKU to Family & Children's Services (Child Welfare) without ever trying to contact his mother JESSICA, who was at home on Ringold St., a block away. Defendants also never notified JESSICA that MOKU was at Family & Children's Services, even though TAKURO had provided her phone number. This was in violation of SFPD Department Bulletin 13-251, promulgated on December 6, 2013, regarding Children of Arrested Parents, which provides that when arresting a parent, officers should determine whether a non-arrested parent is willing to take responsibility for the children.

24. Two hours after TAKURO had left home to go to the grocery store, JESSICA, who was very worried by that point, answered TAKURO'S phone to find that it was Family & Children's Services. The CPS worker, apparently assuming that SFPD would have notified JESSICA that they were taking MOKU, asked JESSICA why she hadn't contacted them. The worker told JESSICA that the police had said her husband was drunk and had hit a police car on his bike, neither of which was true, and which greatly distressed JESSICA. CPS workers then went to plaintiffs' home. JESSICA was very surprised and upset that the workers did not have MOKU with them. They interviewed JESSICA, and then took her to where MOKU was and returned MOKU

to JESSICA. The detention of MOKU and separation from his mother, although temporary, was traumatic for both JESSICA and MOKU.

25. TAKURO HASHITAKA never engaged in any conduct justifying the SFPD use of force, the arrest, or the removal and detention of his child.

26. Family & Children's Services determined that defendants' complaint against TAKURO for child neglect was unfounded. In her report, the CPS worker described MOKU as a beautiful, healthy, clean and well groomed baby boy, and both parents as loving and caring toward him. Family & Children's Services did not find defendants' allegations to constitute child abuse or neglect.

27. Plaintiff TAKURO HASHITAKA spent the night in jail, but was never charged with any crime in connection with this incident.

28. As a result of defendants' misconduct, including their brutality and wrongful arrest of TAKURO and forceful removal and wrongful separation of MOKU from his parents, TAKURO, MOKU and JESSICA all suffered severe emotional distress, trauma, fear and anxiety. TAKURO also suffered physical pain and suffering, injuries to his neck and right hand, and abrasions.

## VI. REQUISITES FOR RELIEF

29. Plaintiffs are informed and believe that the violations of the plaintiffs' constitutional and lawful rights complained of herein were caused by customs, policies, directives, practices, acts and omissions of authorized policy makers of defendant CITY AND COUNTY OF SAN FRANCISCO, including Chief Greg Suhr and other supervisory officials of the SFPD and the City of San Francisco, who encouraged, authorized, directed, condoned, and ratified the unconstitutional and unlawful conduct

complained of herein. Said customs, policies and practices include, but are not limited to the use of excessive force, racial profiling, and/or other customs, policies and/or practices subject to continuing discovery.

30. Plaintiff is informed and believes that Defendant CHIEF SUHR, SGT. IMBELLINO, and DOES 1-50 and/or each of them, caused the violation of the plaintiffs' federal constitutional rights as a result of their supervisory malfeasance and/or deliberate indifference to the need for more or different training, supervision and/or discipline of the San Francisco Police personnel assigned to the subject incident, including, but not limited to, DOES 1-50, and/or each of them, to prevent the foreseeable violation of the plaintiffs' federal constitutional rights.

31. As a direct and proximate result of the conduct of defendants described herein, plaintiffs have been denied their constitutional, statutory and legal rights as stated below, and have suffered general and special damages, including but not limited to, physical injuries and bodily harm, pain, fear, trauma, mental and emotional distress, anxiety, humiliation, embarrassment, and other damages in an amount according to proof.

32. The individual defendants' acts were willful, wanton, malicious and oppressive and done with conscious disregard and deliberate indifference for plaintiffs' rights.

33. Plaintiffs have incurred, and will continue to incur, attorneys' fees and costs in amounts to be determined according to proof.

## VII. CLAIMS FOR RELIEF

### ONE - VIOLATION OF FOURTH AMENDMENT (42 U.S.C. § 1983)

34. Plaintiffs re-allege and incorporate by reference the preceding paragraphs of this Complaint.

35. Defendants' above-described conduct violated plaintiffs TAKURO HASHITAKA and MOKU HASHITAKA's rights to be free from unreasonable seizures and unnecessary, excessive and/or arbitrary force, detention and imprisonment without reasonable or probable cause, under the Fourth Amendment to the United States Constitution.

### TWO - VIOLATION OF FIRST AMENDMENT (42 U.S.C. § 1983)

36. Plaintiffs re-allege and incorporate by reference the preceding paragraphs of this Complaint.

37. Defendants' above-described conduct violated plaintiff TAKURO HASHITAKA's right to freedom of speech, and plaintiffs MOKU HASHITAKA, JESSICA FISH HASHITAKA and TAKURO HASHITAKA's rights to familial association, under the First Amendment to the United States Constitution.

### THREE - VIOLATION OF FOURTEENTH AMENDMENT (42 U.S.C. § 1983)

38. Plaintiffs re-allege and incorporates by reference the preceding paragraphs of this Complaint.

39. Defendants' above-described conduct violated plaintiffs' TAKURO and MOKU's rights to not be deprived of liberty without due process of law, and to personal liberty and freedom of movement, and TAKURO, JESSICA and MOKU's rights to equal protection of the laws, to child custody and to remain together as a family unit without

interference by the state, under the Fourteenth Amendment to the United States Constitution.

### FOUR – ASSAULT AND BATTERY (TAKURO AND MOKU)

40. Plaintiffs re-allege and incorporate by reference the preceding paragraphs of this Complaint.

41. Defendants' above-described conduct constituted assault and battery of plaintiffs TAKURO HASHITAKA and MOKU HASHITAKA.

### FIVE – FALSE IMPRISONMENT (TAKURO AND MOKU)

42. Plaintiffs re-allege and incorporate by reference the preceding paragraphs of this Complaint.

43. Defendants' act of intentionally imprisoning TAKURO HASHITAKA, and detaining MOKU HASHITAKA at Family and Children's Services, constituted false imprisonment of TAKURO and MOKU.

### SIX – VIOLATION OF RALPH CIVIL RIGHTS ACT (TAKURO AND MOKU)

44. Plaintiffs re-allege and incorporate by reference the preceding paragraphs of this Complaint.

45. Defendants' above-described conduct was motivated by racial and national origin bias.

46. Defendants' above-described conduct violated plaintiffs TAKURO and MOKU'S rights to be free from violence and intimidation by threat of violence because of their actual or perceived race, color, ancestry, and/or national origin, in violation of California Civil Code section 51.7.

### SEVEN – VIOLATION OF BANE CIVIL RIGHTS ACT

47. Plaintiffs re-allege and incorporate by reference the preceding paragraphs of this Complaint.

48. Defendants' above-described conduct constituted interference, and attempted interference, by threats, intimidation and coercion, with plaintiffs' peaceable exercise and enjoyment of rights secured by the Constitution and laws of the United States and the State of California, in violation of California Civil Code section 52.1.

### EIGHT - NEGLIGENCE

49. Plaintiffs re-allege and incorporate by reference the preceding paragraphs of this Complaint.

50. Defendants had a duty of care to plaintiffs to ensure that defendants did not cause unnecessary or unjustified harm to plaintiffs, and a duty of care to hire, train, supervise and discipline SFPD officers so as not to cause harm to plaintiffs and prevent violations of planitiffs' constitutional, statutory and common law rights.

51. The above-described acts and omissions of defendants breached the duty of care defendants owed to plaintiffs.

## VIII. PRAYER FOR RELIEF

WHEREFORE, plaintiffs pray for judgment against defendants, and each of them, as follows:

1. For general and compensatory damages for violation of plaintiffs' federal and state constitutional and statutory rights, pain and suffering, all to be determined according to proof;

2. For punitive and exemplary damages in amounts to be determined according to proof as to the individual defendants;

3. For an award of statutory damages and penalties pursuant to Cal. Civil Code section 52 to be determined according to proof;

4. For attorneys' fees pursuant to 42 U.S.C. § 1988 and California Civil Code section 52(b) and section 52.1(h), and California Code of Civil Procedure section 1021.5;

5. For costs of suit;

6. For pre- and post-judgment interest as permitted by law;

7. For such other and further relief as the Court may deem just and proper.

### IX. JURY TRIAL DEMAND

Plaintiffs hereby demand a jury trial.

### X. CERTIFICATION OF INTERESTED ENTITIES OR PERSONS

Pursuant to Civil L.R. 3-16, the undersigned certifies that as of this date, other than the named parties, there is no such interest to report.

Dated: October 14, 2014            /S/
                                   RACHEL LEDERMAN
                                   Attorney for plaintiffs